## T. L. PHILLEO v. J. L. SMALLEY.

*Quere?* Whether or not, the execution law of 1839 is repealed by the provisions of the constitution, so far as it exempts homesteads from forced sale?

In order to constitute a house a homestead, so as to exempt it from execution, it is not sufficient that its owner use one of the rooms for his ordinary business, as keeping a grocery, and sleep in one of the other rooms, and at the same time take his meals habitually at another place. A man's homestead must be his place of residence; the place where he usually sleeps and eats; where he surrounds himself with the ordinary insignia of home, and where he may enjoy its immunities and privacy.

APPEAL from Cherokee.    Tried below before the Hon. Reuben A. Reeves.

This was an action of trespass to try title, brought on the 27th of August, 1858, by the appellant against the appellee, for a town lot.

The defendant pleaded the general issue; and that about the year 1850 or 1852, he became the owner of the lot sued for, and that since that time he had neither owned nor claimed any other tract or parcel of land, and had been, during that period, and was yet, a citizen of the state; and in his capacity of grocery keeper, has occupied and enjoyed the house and lot for eight years, preceding June, 1857.

The plaintiff excepted to the defendant's answer; but the court overruled his exception. A jury was waived, and the cause submitted to the court.

It appeared from the testimony, that the defendant acquired

the house and lot sued for, in the year 1850; that in the year 1856, it was levied upon and sold, by virtue of an execution, issued upon a judgment against him and others; that at the sale the plaintiff became the purchaser, for the sum of $530; and having paid the purchase-money, a deed was thereupon made to him for the property.

It was proved, that the defendant, at the time of the levy and sale, was a single man, and had occupied the house as a grocery, for about eight or ten years before the sale; selling groceries in the front room, and sleeping in the back room, and there also, keeping his trunk, clothes, wash-pan and towels, but eating his meals at the tavern, and having his washing done at different places.

Judgment was rendered in favor of the defendant. The appellant assigned as error, that "the court erred in finding for, and rendering judgment for the defendant, upon the evidence adduced in the case."

*Donley & Anderson*, for the appellant.—The claim of exemption of the lot in controversy, is based upon the Act of 26th of January, 1839, (Hart. Dig., Art. 1270, p. 405,) which provides that there shall be reserved to every citizen or head of a family, * * * free and independent of the power of a writ of *fieri facias*, * * * fifty acres of land, or *one town lot*, including his or her homestead. We submit, that, under this statute, for a town lot to be exempt, it must include the homestead of the party; and that if, at the time of the sale, it is not connected with, or does not include the homestead, it would not be exempt; and that unless it did include the homestead, it would be as subject to sale, as a tract of land of two hundred acres is now, under the constitution, which is not occupied as a homestead, at the time of the sale. And there is a difference, too, between the constitutional provision, with reference to the homestead, and the statute. In the constitution, any one lot need not "include" the homestead; the language in the constitutional provision is, a homestead of any town or city *lots*. Consequently, the cause of Pryor v. Stone, in which it was held, that any lot, not con-

tiguous to the homestead, but used for the convenience or neces-
sity of the family, was not subject to execution, does not apply.
(Pryor v. Stone, 19 Texas Rep. 373.) But in the statutory pro-
vision, the lot, to be exempt, must be in truth and in fact, the
*homestead* of the party.

A homestead, is defined by Webster to be, the "place of a
mansion, the enclosure or ground immediately connected with
the mansion; native seat; original station or place of residence."
Now we submit that, taken in either sense, in that of a mansion
or residence, it implies a place where a party *keeps himself,* and
furnishes himself, if single, or his family, if he have one, with
all such things as are required in the support or sustenance of
him, or of his family. That it implies a place where a man is
provided with all things necessary in the ordinary affairs of
every-day life; not only a place to sleep in, and keep his clothes
in, but a place where he keeps the material for the preparation
of his food, and where he has it prepared, and where he takes
his meals; or, in one word, the homestead is the place where he
"lives;" and this includes the idea that it is the place where he
does all things necessary to live. If we be correct in this propo-
sition, the house occupied as a place for selling groceries, uncon-
nected with any homestead to protect, would be subject to exe-
cution; and the judgment overruling the plaintiff's exception to
the defendant's answer, was erroneous.

But, again, we submit that the defendant, Smalley, being a
single man, without a family, is not entitled, under the law as
it now is, even to a homestead; that the subsequent enactment
of the constitution, with reference to the homestead, was a repeal
of all prior statutes on the subject. We do not design to be
understood, that it totally repealed the Act of 1839, but only so
much of it, as is embraced in the constitutional provision. We
submit that the constitutional provision, with reference to the
homestead, repealed that portion of the Act of 1839, providing
for the homestead exemption, not because it is clearly repugnant
to it, but because it was intended, by the framers of the consti-
tution, to prescribe the only rule that should govern in the case.

The constitutional provision is, and must be, the only rule; for, from its very nature, and by its providing for a larger quantity of land, or town lots, it destroys all efficacy of the statutory exemption; unless the untenable position were taken, that a party would be entitled to hold 200 acres, or town lots not exceeding in value $2000, by the constitution; and the additional amount of fifty acres, or one town lot, by the statute; or that the constitution must be regarded as cumulative to the statute. That such was not the intent of the framers of the constitution, is a self-evident proposition. The constitutional provision need not, necessarily, be repugnant to the statute to repeal it; for, as stated by SEDGWICK, "If the subsequent statute be not repugnant, in all its provisions, to a prior one, yet, if the later statute was clearly intended to prescribe the only rule that should govern in the case provided for, it repeals the original act." (Sedgwick on Statutory and Constitutional Law, 124, 126.)

There is another proposition which we would submit, that the defendant was bound to know of the levy and sale; he was notified by the advertisements, and he ought not to be permitted to stand by and see his property purchased, the money applied to his benefit, and then, when the purchaser claims the property, for the first time to make it known that the property was his homestead. But deeming the two previous propositions as decisive of the cause, we submit that the judgment should be rendered in this court in accordance with the facts of the cause.

*M. Priest,* for the appellee.—Our constitution and laws clearly recognise the rights of single men to the privilege of homestead exemption. The statute of 1839, which is not repealed, using the term "citizen *or* head of a family," and the article of the constitution, on the same subject, using the term, "the owner, if a married man," clearly intimate the intention to extend the exemption to those who may not be heads of families, or married men. (Hart. Dig., Art. 1270; and Art. 22, of the General Provisions of the Constitution.)

This court has heretofore adjudicated the questions involved

in this appeal, and settled, that the rights and privileges of exemption extend to single men, and that such an occupation, as is here proved, attach to the premises so occupied, the character of homestead. (Cobbs v. Coleman, 14 Texas Rep. 594; Pryor v. Stone, 19 Id. 371.)

The homestead is a subject-matter over which our courts have no jurisdiction, except to protect them, and to seize or sell which, our laws are powerless; and a sale of the same, by process of law, can confer no rights, either equitable or legal, on the purchaser. He is a purchaser with notice of existing rights; nor is any thing lost by the claimant, if he should stand by in silence at the sale, as the law proclaims his rights, and speaks for him, forbidding the sale.

BELL, J.—We do not think it necessary, in this case, to decide, whether or not the execution law of 1839, so far as the same secures to every citizen, or head of a family, a homestead, is in force, since the adoption of the state constitution. The statute referred to, has been held by this court to be in force, so far as to exempt the personal property, named in the statute, from execution, whether the same belongs to single persons or not. The state constitution contains a distinct provision on the subject of homesteads; and it will be worthy of consideration, whenever the question is distinctly presented to this court, whether or not the execution law of 1839, is repealed by the provisions of the constitution, so far as it exempts homesteads from forced sale.

We think, that the facts in the present case show, that the premises in controversy in this suit, did not constitute the homestead of the appellee. He used the premises for business purposes, and slept in one of the rooms of the house, but at the same time took his meals habitually at another place. A man's homestead must be his place of residence; the place where he lives; the place where he usually sleeps and eats; where he surrounds himself with the ordinary insignia of home, and where he may enjoy its immunities and privacy. We do not think that

the facts in this case show, that the appellee used the premises as a homestead, at the time of the sale under execution. The judgment is therefore reversed, and such judgment will be rendered by this court, as ought to have been rendered in the court below.

Judgment reversed and rendered.