N. DRUCKER, APPELLANT, VS. H. ROSENSTEIN, APPELLEE.

1. A piece of land, never occupied as a dwelling place or home, and incapable of such occupancy, is not a homestead within the meaning of the Constitution and laws of this State.

2. The bare fact of filing and recording in the records of the Probate office of the County Judge, a statement in writing, containing a description of the real property claimed to be exempt, and declaring that the same is the homestead of the party in whose behalf such claim is made, under the law (McClellan's Digest, page 531, §11,) does not of itself exempt the land as a homestead from forced sale.

3. R. filed and recorded his statement as provided by law, claiming a certain bare and unoccupied lot as his homestead. He then made a contract with a builder to erect upon it a residence for himself and family, caused estimates and specifications and had drawn upon such lot some of the building material. D. filed a creditor's bill to subject such lot to the payment of a debt : *Held*, That inasmuch as the lot was not actually occupied by R. as a homestead, or in a condition to be so occupied, it was not as such exempt under the Constitution and laws.

4. The provisions of the homestead laws should be carried out in the liberal and beneficent spirit in which they were enacted, but at the same time great care should be taken to prevent them from becoming the instruments of fraud.

Appeal from the Circuit Court for Escambia county. The facts of the case are stated in the opinion.

*G. A. Stanley* for Appellant.

*S. R. Mallory* and *R. H. Fries* for Appellee.

MR. JUSTICE VANVALKENBURGH delivered the opinion of the court.

In the month of April, 1882, the appellant, Drucker, filed a creditor's bill in the Circuit Court of the First Judi-

cial Circuit, in and for Escambia county, in chancery sitting, against the appellee, Rosenstein.

The bill alleges that on the 12th day of March, A. D. 1882, the complainant recovered a judgment in the Circuit Court in said county against the defendant for the sum of two hundred and twenty dollars damages and five dollars and seventy-one cents costs; that on the 24th of March, 1882, execution was issued upon said judgment to the sheriff of said county, who by virtue thereof levied upon a lot in the city of Pensacola described as " the S. 51 feet of lot 187 in block 27, fronting on Barcelona street 51 feet, more or less, and having a depth at right angles to Barcelona street of one hundred feet and house sills;" that the defendant claims to hold the lot so levied upon as a homestead and therefore exempt from forced sale under the Constitution and laws of this State; that the execution so issued as aforesaid was returned unsatisfied, and that the defendant has no other property out of which the judgment can be satisfied. The complainant, therefore, prays that a decree may be entered subjecting the said real estate to sale for the satisfaction of such judgment. He further charges that defendant purchased said real estate on the 16th February, 1882; that the defendant was then insolvent and largely indebted to complainant and others for goods and merchandise which he sold, and as complainant is informed and believes invested a portion of the proceeds of said sale in the said real estate; that defendant subsequent to the purchase of said real estate filed his statement in the office of the County Judge of said county declaring that such real estate was his homestead; that at the time of his filing such statement the real estate was and now is a vacant and unoccupied lot and has not been occupied by defendant as a residence, and that it is not exempt as a homestead within the intent and meaning of the Constitution and laws of this State.

The defendant, for answer to the bill so filed by the complainant, alleges that he purchased the said lot on the 16th day of February, 1882; that he was then insolvent and indebted in various sums to the complainant and other parties for goods and merchandise; that he borrowed $180, and that he earned $20 by playing the violin; that this $200 he paid for said lot, and he denies that any part of the purchase-money was derived from the sale of any of the goods and merchandise purchased by him of complainant or any other persons, as charged in the bill; that he bought said lot with the sole purpose of making the same his homestead by building a residence thereon and occupying the same with his family, which consists of his wife and seven children; that on the 6th day of March, 1882, he filed and recorded in the records of the probate office of the County Judge of Escambia county his statement in writing, containing the description of said property and claiming the same as a homestead, exempt from forced sale under the provisions of the Constitution and laws; that before the execution upon said judgment was levied by the sheriff upon said real estate he had made a contract with a builder, and the specifications were drawn and agreed to for the building of a dwelling house upon said lot, which dwelling house it was the intention of the defendant should be the homestead of himself and family; that the sills for the said building were drawn and deposited upon the said lot, and that the building would have progressed had it not been for the complainant filing his bill; that defendant claims said lot to be exempt from forced sale as a homestead under the Constitution and laws of this State. On the 29th day of April, the cause having been heard on bill and answer, the Chancellor made a decree dismissing the complainant's bill.

From this decree the complainant brings his appeal.

This case differs from that of Solary vs. Hewlett, decided at the January Term, 1882, and to be found in 18 Fla., in this, that here the appellee, before judgment was recovered, had filed and recorded his statement under the statute in the records of the probate office of Escambia county, containing a description of the property and claiming the same as a homestead exempt from forced sale ; that previous to the levy upon the said lot by virtue of the execution issued upon such judgment, the appellee had made a contract with a builder to erect thereon a house for the residence of himself and family ; that the plan of such house had been agreed upon and the specifications fully made out and agreed to, copies of which were attached to the answer of defendant to complainant's bill; that the sills for such building had been drawn and deposited upon the said lot, and that the erection of such homestead was only delayed by commencement of this action by the complainant. The bill alleges that the "house sills" were levied upon by virtue of the execution as well as the lot.

In that case the lot claimed as a homestead had upon it a dwelling house occupied by a tenant and requiring repairs before Hewlett and his family could move into it, but he proposed to make those necessary repairs as soon as he was able so to do, and then occupy it with his family. In this case the lot when purchased was vacant and unoccupied.

In the case of Oliver vs. Snowden, 18 Fla., this court held that the selection and the recording of the designation of a homestead under the law of 1869 did not make it a homestead in fact, so as to exempt the property from sale, without actual occupancy as a residence, "or perhaps when it is manifestly intended to be used as the home of the family, as was said by the Chief-Justice in 21 Wall., 486, the manifest intention being shown by proof of preparations made to occupy immediately as a home."

There was no house upon this lot, and in order to enable the appellee to occupy it as a homestead one would have to be erected. The appellee had made preparations for building, and attaches to his answer a copy of the estimates and plan of the house.

The appellee alleges in his answer that he would " have proceeded to have the said dwelling house erected immediately, but was prevented by the levy of said execution."

Is this a sufficient occupation of the premises as a homestead to render them exempt from forced sale?

The almost uniform current of decisions is that actual occupation of property as a home of the family is necessary to impress upon it the character of a homestead. Givans vs. Dewey, 47 Iowa, 414; Gregg vs. Bostwick, 33 Cal., 220; Lee vs. Miller, 11 Allen, 37; Coolidge vs. Wells, 20 Michigan, 79; McConnaughy vs. Baxter, 55 Ala., 379; Philleo vs. Smalley, 23 Texas, 498; Thompson on Homesteads, §§244, 246; Austin vs. Stanley, 46 N. H., 51; Bugbee vs. Bemis, 50 Vt., 216.

It has been held that temporary absence from the premises upon which a dwelling house had been occupied as a home, with the intent to return to it, would not be a relinquishment of the homestead right. In the case of McConnaughy vs. Baxter, *supra*, the court say: "Temporary absence, the intent to return and occupy existing, might not work an abandonment of the right, as it would not of domicile. The actual occupancy having existed, its cessation being temporary, the *animus revertendi* would, in legal contemplation, continue it as to the home, the dwelling place. Premises, the immediate occupation of which as a homestead is contemplated, but which is deferred from necessity or convenience only for a reasonable time, would probably be entitled to protection during the interval of delay in actual occupancy, but a lot never occupied as

a dwelling place, and incapable of such occupancy, is not homestead within the Constitution or the statute." In the case of Neal vs. Coe, 35 Iowa, the defendant owned a homestead in Davenport on which his family resided. He purchased certain other property in Crawfordville with the intention of moving on to it and making it his home. He left money to repair the premises and returned to Davenport for his family. He removed his goods into the house so purchased by him, but the repairs not having been completed, his family boarded at a hotel. His horse and buggy were kept in a stable on such premises. He made a garden there, and caused a portion of the land to be sowed in grain. All the members of the family were at the house daily, and regarded the place as their home.

He purchased the place on the 1st of April, and the repairs were finished and he actually commenced living in the house about the last of June. The plaintiff had knowledge of the condition of the defendant and the character of the occupation of the premises during the whole time. The court held the premises exempt from liability for the plaintiff's judgment. The court say, " while intention is not alone sufficient to impress the homestead character, yet it may be considered in connection with the circumstances. Sometime usually intervenes after the purchase of property before it can be actually occupied. Even after the process of moving it frequently takes days before the furniture can be arranged, and the house placed in comfortable condition for actual occupancy. Under such circumstances great inconvenience might arise if the homestead character was made to depend upon the actual personal presence of the members of the family. Law is entitled to and can command respect only when it is reasonable and adapted to the ordinary conduct of human affairs." In the case of Barnes vs.

White, 53 Texas, 628, the plaintiff endeavored to subject certain lots and a house to the payment of a debt incurred by defendant for material to be used in the construction of the house. The lots were bare of improvements. The defendant and his family were boarding out, the material furnished were sash, doors, &c., used in the construction of the dwelling-house, into which as soon as it was finished the defendant and his family removed. The defendant pleaded that the property for which the material was furnished was and still is the homestead of himself and family. The court held that the property was exempt as the homestead of the defendant, and use the following language : " Where there has not been a previous actual occupancy there should be at least a present *bona fide* intention to thus dedicate the property, coupled with such acts of preparation and subsequent early use as a homestead as would reasonably amount to this notice, and thus prevent that from being used as an instrument of fraud which was designed as a shield of protection." These last two cases go as far as authority that an unoccupied lot can be claimed as a homestead as any we have been able to find. In the case of Neal vs. Coe it will be observed that there was a house upon the premises, and that the defendant did occupy it with his furniture ; that his horse was kept at his stable upon the premises, and that the land about the house was tilled as a garden ; that the members of his family were at it daily and regarded it as their home ; that when the repairs were finished they actually moved into the house. The court held that this was an occupancy of the premises as a homestead. In the case of Barnes vs. White the material was furnished in 1877, and the action to subject the property to the payment of the debt was brought more than a year subsequent to that time. In the meantime the defendant, White, had occupied the premises as a homestead, and when the action was brought

he was, with his family, in the actual occupation. It was the case of a debt sought to be satisfied by a creditor out of a subsequently acquired homestead. In the case at bar there was and had been no actual occupation of the lot as a homestead since the title passed to the appellee. The bare fact of his filing and recording in the records of the Probate office of the County Judge of Escambia county his statement under the law does not exempt the land as a homestead. Connected with such act there must be actual occupancy. It is not necessary that a dwelling-house should be upon the premises; he might with his family reside in a tent set upon poles or a cabin erected upon it while building his house, and such occupation would give to it the character of a homestead and protect it under the statute from forced sale.

While the object of the homestead provisions of the Constitution and law is to protect the debtor and his family in the enjoyment of a home against creditors whose claims were not embraced in the exceptions, as for purchase-money, &c., yet the property must, when claimed as exempt, be stamped with the character of a home by some circumstance other than the *intention* to make it so. A bare lot unoccupied cannot be a homestead. Lumber placed upon it for the purpose of building is not such occupancy, even though there may be a contract made for building. The whole claim is based upon the bare declared *intention* to build a house upon the lot, and the presence of pieces of timber which may be so used when the defendant can find the means to complete it. This debtor, should he enjoin a levy and sale on the ground that he intended to make a homestead on the lot, might do nothing further toward building a house until another levy is made and thereby placing a few more sticks of timber on the lot again claim the homestead exemption on the ground that he was still

building or preparing to build a house to be occupied by his family, and in this he may be sincere, but yet the lot is not his *homestead* within the legal definition of the term.

It may be said that under the law, as we understand it, a poor man may never be able to obtain a homestead. This may be a defect in the law, but we cannot make laws to supply such defects, if they exist. To hold that this lot is exempt as a homestead, because the defendant intended to make it so at some future time might be defended as an act of mercy, but that is rather the office of the Legislature. It would be difficult to draw the line where exemption begins to attach to unoccupied land if this claim of immunity is allowed.

If we declare this lot exempt as a homestead, where would the exemption cease to operate if the house was not built or completed ?

Many of the cases decided in other States go far toward protecting property from sale for debts under the homestead laws, but none of them go so far as we would be required to go in this case to exempt this property from sale. It is not a homestead, though the intention may be to make it one at some future time. We believe that the provisions of the homestead laws should be carried out in the liberal and beneficient spirit in which they were enacted, but care should be taken at the same time to prevent them from becoming the instruments of fraud.

We are of the opinion that the dismissal of the bill by the Chancellor was error, and the decree is reversed and the cause remanded.