# Garrett & Sons *v.* Jones.

*Contested Claim of Homestead Exemption.*

1. *House and lot as homestead; how determined.*—Whether or not a house and lot in an incorporated town can constitute an exempt homestead, is to be determined by the character of the building, the uses to which it is adapted, and to which it has been devoted, and not by the intention or purpose of the owner in building it; and where the house, as here, is a building 40 feet by 20, divided by partitions into two rooms, the larger one being fitted up with shelves and used as a bar-room, first by the owner and then by his lessee, it can not be claimed as a homestead because the smaller room, about 14 by 16 feet in size, was used by him as a bed-room, while taking his meals elsewhere in town, and was not leased with the residue of the premises, though the lessee was allowed to sleep in it.

[Garrett & Sons v. Jones.]

APPEAL from the Circuit Court of Tallapoosa.

Tried before the Hon. J. R. DOWDELL.

The appellants in this case having obtained a judgment on the 17th September, 1890, against L. D. Jones, an execution thereon was levied by the sheriff, October 8th, 1890, as shown by his return, "on one business house and lot in the town of Camp Hill, known as the 'L. D. Jones Bar-room', bounded as follows," &c. The defendant interposed a claim of exemption to the house and lot as his homestead, describing it as "one storehouse and lot in the town of Camp Hill, known as the 'L. D. Jones Bar-room,' bounded as follows"; and his claim was contested by the plaintiff. On the trial of the issue joined between the parties, it was shown that the value of the property was less than $1,000; and the other evidence is thus stated in the bill of exceptions:

"The defendant himself, and G. W. Dawson, R. R. Spinks and others, in his behalf, testified substantially, that said house and lot was situated in the town of Camp Hill, the house being about 40 feet from the track of the C. & W. Railway Company, and 25 or 30 yards from the depot, being in the immediate locality of other business houses in said town, and without any inclosure around the building, or other obstructions to approach thereto; that said house is about forty feet in length, extending north and south parallel with the railroad track, and about twenty feet in width; that it was built by said Jones in 1887, to be used as his home and residence, and for a business house, and was so used and occupied; that on the north and south ends, and also on the east side, on the outside of the building, were imprinted in large letters the words, ' *L. D. Jones, dealer in liquors, fine wines, &c.,*' together with drawings representing a barrel, jug, decanter, &c.; that there is a door in the east side of said house, and another in the north end thereof; that said house is divided by partition walls into two rooms, one of which, as said Jones testified, is about fourteen feet wide by sixteen feet long, in the south-west corner of the building, from which a door opens into the other room, and used as a common passway between the two rooms; that in the year 1890, and at the time of said levy, as well as at the time of the trial, the front room of the house, in which were the bar-fixtures of said Jones, was rented and occupied by one Landrum as a liquor-saloon, the back room being reserved and occupied by said Jones as his home, but was also used by said Landrum as a bed-room in conjunction with said Jones, and by his permission, but not under the

[Garrett & Sons v. Jones.]

contract of rent; that said Jones, who is an unmarried man, kept his bed, his trunk, gun, wardrobe, and all his household goods in said room, and occupied the same as his place of residence, but ate his meals at the residence of the witness Dawson, who resided on a different lot in said town; and that said defendant had no other place of residence. It was shown, also, that each of said rooms was provided with a fire-place by means of a stack chimney between them; that the larger room was provided with a counter, screen, decanters, barrels &c., and otherwise appointed for saloon purposes; and that there was a door in the south end of the building, entering the room occupied by said Jones. This being all the evidence, the court charged the jury, on request, that they must find for the defendant, if they believed the evidence." The plaintiffs excepted to this charge, and they here assign it as error.

H. J. GILLAM, for appellants, cited *Blum v. Carter*, 63 Ala. 235; *McConnaghy v. Baxter*, 55 Ala. 381; 9 Amer. & Eng. Encyc. Law, 428, note 9.

W. D. BULGER, contra, cited *Pryor v. Stone*, 19 Texas, 371; *Ockley v. Chamberlain*, 76 Amer. Dec. 516; 70 Amer. Dec. 341.

McCLELLAN, J.—Whether the house and lot involved in this case constitutes the homestead of the defendant Jones, depends upon the character of the building, and the uses to which it is adapted and to which it was devoted. The purposes for which it was erected by Jones, the fact that it was built by him "to be used as his home and residence, and for a business house," can exert no influence in determining whether it was "a home and residence" now that it has for long been a completed structure and subjected to whatever occupancy was originally contemplated by the claimant. Its *status*, as being a homestead or not, must be adjudged by what he did—by the character of house he built, and the uses to which he in fact devoted it—and not by what he intended to do. Moreover, the fact that he built it for a home and residence can not be proved by evidence of his mere purpose to subserve that end, but can only be found inferentially from his visible acts in the premises; and his testimony that such was his purpose must be taken to mean only that he intended to build such a home and residence as he did in fact build. And however his mind may have been imbued with the idea that he was pro-

Vol. 95,

posing a home for himself, it will not be held to be a homestead, unless, dissociated from his own purposes, the house and lot in question fills the definition of a homestead under our laws. The evidence of his intentions found in this record must, therefore, be wholly disregarded; and the inquiry must proceed with reference solely to the kind of house which is on the lot and the nature of its occupation by Jones; it being admitted that, as to location, area and value, the house and lot is within the exemption secured to Jones against the claim which the plaintiffs seek to enforce upon it.

The house is in the business portion of the town of Camp Hill. It is not inclosed as residences in towns of this class usually are. Its dimensions are about forty by twenty feet. It is divided by partition walls into two rooms, one of which is in a corner of the building and is about sixteen by fourteen feet. The other and larger room covers the remainder of the building, and this is filled up with counters, &c., as for a business house. Between these rooms there is a door leading from one to the other. Each room has a fireplace served by a stack-chimney constituting a part of the partition between them. Such was the character of the house— essentially an ordinary business house, with the usual smaller room at the back of it.

Now, as to the uses to which it was put. When the building was completed, about 1887, Jones carried on the business of a retail liquor-dealer in the front room, and had an illustrated sign painted on the outside of the building proclaiming his business. In 1890, and thence up to the time of the levy and trial, Jones rented the front room with its bar-fixtures, &c., to one Landrum, who continued the liquor business therein. In 1887, Jones, who is an unmarried man, fitted up the back room as a bed-room, and has continued to occupy it as such ever since. This room was not let to Landrum along with the other, but since he has been Jones' tenant of the main room he has, by permission of the latter, also slept in the back room. Jones does not, and never has taken his meals in this bed-room, or in the house, but boarded at the house of one Dawson situated in another part of the town.

On these facts, there can be no doubt that the primary adaptation of the building is to the purposes of business, and that its principal uses are, and have always been, the uses of trade, and not those of domiciliary occupation. The authorities are by no means uniform as to what will or will not be considered a homestead, when the building

claimed as such is in part adapted and devoted to business pursuits, and in other part used as a dwelling; but we think it may be laid down as a safe and conservative rule on that subject, that where the trade adaptation and use of a building is incidental or secondary only to its habitation as a dwelling—where the chief use of the structure is that of a home for the owner, and some part only not essential to this end is fitted up and used as a shop, an office or sales-room—it is a homestead; but, when this state of facts is reversed, and the residence feature is only auxiliary to the business use—where only a relatively small part of the building is devoted to the uses of habitation, and the chief adaptation and use are those of business—the building is not a homestead, even though the occupant have no other home, and uses this for all the purposes of living.  Illustrations will readily suggest themselves.  For instance, the owner of an hotel, erected for and adapted to the purposes of public entertainment, would not have homestead therein though he resides there with his family; but the owner and occupant of a private house would not be deprived of the exemption through the fact that he rented rooms to lodgers and entertained them, or even travellers, at table for a consideration.  A professional man would not lose the exemption by reason of devoting some part of his dwelling to the uses of his profession; but if a physician, for instance, should make a public infirmary of his residence, and continue to live there merely as an incident to the conduct of the hospital, we apprehend homestead would be lost.—*Ackley v. Chamberlain,* 16 Cal. 181; *Luxell v. Luxell,* 8 Allen, 575; *Mercier v. Chase,* 11 Allen, 194; *Goldman v. Clark,* 1 Nev. 607; *Harriman v. Ins. Co.,* 49 Wis. 71; *Laughlin v. Wright,* 63 Cal. 113; *Pryor v. Stone,* 70 Am. Dec. 341, and notes, 348 *et seq.*

Guided by this rule, our conclusion would be against the defendant's right of homestead, even if he had used the house in question for all the purposes of residence. . *A fortiori,* must that conclusion be reached in view of the fact that the only occupation of the premises by the defendant consisted in the fact that he with another, there by his license, used a small back room of this storehouse as a bed-room, and kept his personal effects there, while he ate at another place situated in a distant part of the town.  The case presented, in view of this fact, is the usual one of occupation of the back room of a storehouse for sleeping purposes only; and it would be anomalous to a degree to hold that to be the residence—the home—of the occupant, which is saved to him by our homestead laws.

[Levy & Co. v. Alexander.]

This precise point has been ruled by the Supreme Court of Texas; and we can not do better than close this opinion by quoting the language there employed : "We think that the facts in the present case show that the premises in controversy in this suit did not constitute the homestead of the appellee  He used the premises for business purposes, and slept in one of the rooms of the house, but at the same time took his meals habitually at another place.  A man's homestead must be his place of residence ; the place where he usually sleeps and eats ; where he surrounds himself with the ordinary insignia of home, and where he may enjoy its immunities and privacy.   We do not think that the facts in this case show that the appellee used the premises as a homestead at the time of the sale under execution."—*Philleo v. Smalley*, 23 Texas, 498.

The Circuit Court erred in giving the affirmative charge for the defendant; and its judgment must be reversed. The cause is remanded.