TJOFLAT, Circuit Judge:
 

 This appeal is from a district court order determining that an order of the bankruptcy court was interlocutory and denying leave to appeal from that order. We affirm.
 

 I.
 

 On April 20, 1984, The Charter Company and forty-three of its subsidiaries (collectively debtors) filed petitions for relief pursuant to chapter eleven of the bankruptcy laws, 11 U.S.C. §§ 1101-1174 (1982). All of the debtors were continued in possession of their estates pursuant to 11 U.S.C. §§ 1107-1108 (1982). Approximately 140 other Charter subsidiaries continued to operate without filing petitions for relief under the bankruptcy laws.
 

 Along with their petition for relief, the debtors moved the bankruptcy court for an order authorizing them to maintain their existing bank accounts and continue to consolidate cash management for the entire group, transferring monies among the affiliated entities as had been their practice and custom. The bankruptcy court entered such an order
 
 ex parte
 
 on April 20, 1984, authorizing the debtors to “continue to consolidate the management of their cash as has been usual and customary in the past, and to transfer monies from affiliated entity to entity, including operating entities that are not debtors herein; provided, however, that strict records be maintained respecting all such transfers.”
 

 Prudential Insurance Company of America and several banks (collectively lenders) are unsecured creditors of Charter Oil Company and Charter International Oil
 
 *619
 
 Company, two of the debtors and subsidiaries of The Charter Company, in an amount aggregating approximately $215 million. On April 27, 1984, the lenders filed an emergency motion with the bankruptcy court, asking it to vacate the order authorizing the debtors to consolidate cash management. The lenders alleged that the order allowed the debtors unfettered discretion to transfer money from debtor to nondebtor entities thereby dissipating the assets of those debtors owing money to the lenders. In addition to seeking an immediate cessation of cash transfers, the lenders also requested the bankruptcy court to direct repayment, with interest, of any funds transferred after its April 20 order and grant priority status to the claims for repayment.
 

 The bankruptcy judge held a hearing on April 30 to consider the lenders’ emergency motion. In his initial remarks, the judge made it clear that his concern at that time was whether the April 20 order should remain in effect, be modified, or vacated. He indicated that he did not then intend to consider remedies for any transfers that had occurred subsequent to the order, but would leave that issue for another hearing after appropriate motions were filed indicating what damages had been suffered.
 

 The lenders presented evidence at the hearing and attempted to demonstrate that very substantial amounts of money had flowed from debtor to nondebtor entities, going far beyond the debtors’ prepetition ordinary business practice.
 
 [1]
 
 As the debtors’ counsel began his response, the court again instructed that the sole issue before it at that time was whether to vacate the April 20 order. At the conclusion of. the hearing, the bankruptcy judge indicated that he was troubled by the provision of the order allowing cash transfers to non-debtor affiliates that were beyond the court’s control. He also indicated a concern that all creditors receive notice and information regarding the proceedings. The hearing concluded with the judge’s suggestion that the parties get together and submit an order that would reflect the concerns indicated.
 

 The court held another hearing on May 3.
 
 [2]
 
 Testimony was presented indicating that further cash transfers had occurred.
 
 [3]
 
 At the conclusion of the parties’ presentations, the court again expressed its concern over transfers to nondebtor affiliates and the lack of notice to all creditors. The court stated that it could not protect people who were unable to participate in the proceedings and be heard. Reflecting the hurried nature of the proceedings, the court informed everyone present that the order it would enter in the cash management situation would remain open to challenge and that it would welcome whatever suggestions anyone would care to make.
 

 At the conclusion of the hearing, the debtors and lenders presented a proposed order to the court. The proposed order would have frozen the level of cash transfers, required the repayment of all funds previously transferred and the posting of collateral to secure such repayment, provided for payment of interest on such transferred funds after April 20, and imposed reporting requirements on the debtors. The court refused to enter the proposed order because it went well beyond what the court was willing to do at that time. The court had no intention of dealing with pre-petition debt in an order of this type and had been clear in its intention to reserve for another hearing the question of possible remedies for transfers occurring between April 20 and the date of any modified order. The court noted that, because it was acting in an emergency situation, it
 
 *620
 
 was willing to consider an order that would grant the lenders some protection in the manner the debtors operated their cash management system prospectively. The court believed that, given the posture of the case, it would not be appropriate at that time to issue a more sweeping order. The hearing was continued until the following day, at which time the court entered an amended cash management order.
 

 The amended order authorized the debtors “to continue to consolidate the management of their cash as has been usual and customary in the past, and to transfer monies from affiliated entity to entity, including operating entities that are not debtors herein.” Several conditions were imposed on the debtors. Strict record keeping and weekly reporting were required. In addition, a transfer could not be made to a nondebtor affiliate without notice and a hearing if such a transfer would cause the aggregate outstanding indebtedness of nondebtor entities to exceed by more than $20 million the amount of such indebtedness as of May 4. The order expressly provided that it was not addressing cash transfers made prior to May 4, but did require the debtors to provide information regarding those transfers by May 8.
 

 On May 14, 1984, the lenders filed a notice of appeal to the district court from the bankruptcy court’s amended cash management order, treating it as a final order.
 
 [4]
 
 On May 30, the lenders moved the district court to expedite the appeal and suspend the debtors’ ability to make any further cash transfers pending resolution of the appeal. Three other creditors filed leave to appeal to the district court from the amended cash management order, treating the order as interlocutory. The district court ordered the four cases consolidated on June 4 and held a hearing on June 6.
 

 On June 12, 1984, the district court entered its dispositive order. It determined that the bankruptcy court’s order was interlocutory and treated the lenders’ notice of appeal as a motion for leave to appeal. The court denied both sets of creditors leave to appeal, concluding that the case did not involve a controlling question of law as to which there was substantial ground for difference of opinion and that accepting their appeals would not ultimately advance the termination of the bankruptcy proceedings.
 
 [5]
 
 The court determined that the amended cash management order merely maintained the status quo, allowing the debtors to use the cash management system as they had previously. In addition, the bankruptcy court expressly left the issue open for revisitation. The district court concluded that to accept the appeals would merely interpose another judge overseeing the bankruptcy judge and add unwarranted complexity to the case. Rather than present their argument to the district court, the lenders and the other creditors should have given the bankruptcy court the opportunity to amend its order upon the presentation of additional evidence. The lenders appeal from the district court’s dismissal of their appeal.
 

 II.
 

 Resolution of this appeal requires two determinations. First, we must decide
 
 *621
 
 whether the district court erred in determining that the bankruptcy court’s order was interlocutory and thus not appealable as of right. Second, if the order was interlocutory, we must determine whether the district court abused its discretion in failing to grant leave to appeal. We conclude that the bankruptcy court’s order was interlocutory and the district court did not abuse its discretion in denying leave to appeal.
 

 A.
 

 The district courts have “jurisdiction to hear appeals from final judgments, orders, and decrees ... of bankruptcy judges.” 28 U.S.C.A. § 158(a) (West Supp. 1985).
 
 See supra
 
 note 4. A final decision is generally “one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.”
 
 Catlin v. United States,
 
 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945);
 
 see In re Alchar Hardware Co.,
 
 730 F.2d 1386, 1388 (11th Cir.1984) (per curiam). In bankruptcy proceedings, it is generally the particular adversary proceeding or controversy that must have been finally' resolved, rather than the entire bankruptcy litigation.
 
 See In re Saco Local Development Corp.,
 
 711 F.2d 441, 443-46 (1st Cir.1983);
 
 United States v. Air Florida, Inc.,
 
 48 B.R. 749, 750 (S.D.Fla.1984);
 
 cf. Borg-Warner Acceptance Corp. v. Hall,
 
 685 F.2d 1306, 1309 (11th Cir.1982) (order refusing to lift automatic stay is final where it disposed of whole subject matter of complaint). Although courts “take a more liberal view of what constitutes a separate dispute for purposes of appeal” in bankruptcy cases,
 
 In re Leimer,
 
 724 F.2d 744, 745 (8th Cir. 1984), the separate dispute being assessed must have been finally resolved and leave nothing more for the bankruptcy court to do.
 
 Borg-Warner Acceptance Corp. v. Hall,
 
 685 F.2d at 1309;
 
 In re Leimer,
 
 724 F.2d at 745. A review of the proceedings in this case makes it apparent that the controversy over the cash management transfers was not finally resolved before the bankruptcy court.
 

 The essence of the lenders’ contentions on appeal is that the bankruptcy court's amended order was erroneous because it gave the debtors unfettered authority to transfer massive amounts of cash, contrary to the provisions of the bankruptcy laws.
 
 [6]
 
 Both the April 20 order and the amended order, however, merely authorized the debtor to utilize a routine cash management system “as has been usual and customary in the past.” This is entirely consistent with the statute, which allows a debtor in possession to “use property of the estate in the ordinary course of business without notice or a hearing.” 11 U.S.C. § 363(c)(1) (1982). In addition, the bankruptcy court advised the parties that its ruling regarding the operation of the cash management system would be open to reexamination, evidencing the interlocutory nature of the order.
 
 See In re Alchar Hardware Co.,
 
 730 F.2d at 1389 (order not appealable where bankruptcy court’s determination was not “static,” but open to subsequent challenge).
 

 The bankruptcy judge informed the parties on several occasions, including on the face of his amended order, that he would defer a consideration of the appropriateness of cash transfers already made and possible remedies for those transfers.
 
 [7]
 
 It
 
 *622
 
 is therefore clear that the court’s amended order did not finally resolve the dispute and leave nothing for it to do. The effect of the court’s amended order was to address, in an emergency context barely two weeks into the bankruptcy proceeding, the propriety of the prospective operation of a cash management system in the ordinary course of business. Even this was left open to change. Left unresolved was whether the debtors had already made transfers contrary to law or the court’s April 20 order; also unaddressed was a possible remedy if unauthorized transfers had taken place. The amended order was purely interlocutory and was not appealable as of right.
 

 The lenders also contend that the bankruptcy court’s amended order is final and appealable under the doctrines enunciated in
 
 Cohen v. Beneficial Industrial Loan Corp.,
 
 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), and
 
 Forgay v. Conrad,
 
 47 U.S. (6 How.) 201, 12 L.Ed. 404 (1848). We have held that these doctrines apply to bankruptcy court orders.
 
 In re Regency Woods Apartments, Ltd.,
 
 686 F.2d 899, 902 (11th Cir.1982).
 

 Under the
 
 Forgay-Conrad
 
 rule an order is treated as final if it directs the immediate delivery of physical property and subjects the losing party to irreparable injury if appellate review must await the final outcome of the litigation_ Under the
 
 Cohen
 
 collateral order doctrine, for an order to be reviewable it must (1) be independent and easily separable from the substance of other claims in the action; (2) present a need to secure prompt review in order to protect important interests of any party; and (3) be examined in the light of practical, rather than narrowly technical, considerations.
 

 Id.
 
 (citation omitted). For many of the same reasons that we view the bankruptcy court order as interlocutory, it also fails to come within the
 
 Forgay-Conrad
 
 or
 
 Cohen
 
 doctrines.
 

 The order did not
 
 direct
 
 the delivery of property, but merely authorized temporary transfers pursuant to a routine cash management system. Irreparable harm would not have resulted if appellate review had to wait because thé matter was still being considered by the bankruptcy court. The bankruptcy court explicitly left for another hearing the issue of remedies for improper cash transfers. Prompt review was not necessary to secure important interests because the bankruptcy court was willing to, but had not yet had an opportunity to, secure those interests. Finally, practical considerations certainly counsel that the bankruptcy court be given the chance to make a determination in the first instance before the matter is pursued on appeal.
 

 B.
 

 From what we have already said, it is clear that the district court did not abuse its discretion by denying leave to appeal the bankruptcy court’s interlocutory order. As the district court properly recognized, it would have been senseless to add another level of judicial review at a point in the proceedings, in the second month following the chapter eleven petition, when the bankruptcy court had not yet had the opportunity to litigate the claims being raised and had expressly left the matter open.
 

 For the foregoing reasons, the district court's dismissal of the lenders’ appeal is
 

 AFFIRMED.
 

 [1]
 

 . The lenders allege that approximately $47 million in cash was transferred from debtor to nondebtor entities between April 20 and April 30.
 

 [2]
 

 . The court considered two matters at the May 3 hearing. The first was what would be done regarding the April 20 cash management order. The second involved a proposal for post-petition financing.
 

 [3]
 

 .The lenders contended that approximately $20 million in additional funds was transferred from debtor to nondebtor entities between April 30 and May 3.
 

 [4]
 

 . 28 U.S.C.A. § 158(a) (West Supp.1985) provides:
 

 § 158. Appeals
 

 (a) The district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees, and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title. An appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving.
 

 The district court considered the case pursuant to the predecessor statute, 28 U.S.C. § 1334 (1982), which similarly provided that the district courts had jurisdiction from final judgments of bankruptcy courts and that appeals from interlocutory orders of bankruptcy courts could be pursued only by leave of the district court.
 

 [5]
 

 . Because the statute does not provide the district courts any criteria for determining whether to exercise their discretionary authority to grant leave to appeal, the court looked to 28 U.S.C. § 1292(b) (1982) which governs discretionary interlocutory appeals from the district courts to the courts of appeals.
 

 [6]
 

 . The lenders argue that the amended order was contrary to three provisions of the bankruptcy code. First, the lenders contend that the order authorized the use of funds outside of the debtors’ ordinary course of business without prior notice and a hearing, contrary to 11 U.S.C. § 363(b) (1982). Second, the lenders argue that the effect of the order was to allow the debtors to invest funds in nondebtor affiliates, in violation of 11 U.S.C. § 345 (1982). Finally, the lenders point out that 11 U.S.C. § 364 (1982) contains strict safeguards governing the ability of a debtor to obtain credit and incur debt. They argue that it would be absurd so to restrict the debtors’ ability to obtain funds, but freely allow the debtors to lend their funds.
 

 [7]
 

 . The claims the lenders now raise,
 
 see supra
 
 note 6, were left to future resolution by the bankruptcy court. The court has not, as far as the record indicates, addressed the propriety of transfers made prior to its amended order. In fact, on the record before us, it appears that the lenders have never brought their section 364 argument to the bankruptcy court’s attention and only referred to section 345 in passing at
 
 *622
 
 one point during the course of the April 30 hearing. No complaint alleging a section 345 violation appears to have been lodged with the bankruptcy court. The only issue now being argued that was brought to the attention of the bankruptcy court is that the cash transfers were made out of the debtors’ ordinary course of business, an issue expressly left for subsequent development and resolution by the bankruptcy judge.