[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-14367
Non-Argument Calendar
_____

D.C. Docket No. 1:18-cv-20031-KMW,
Bkcy No. 1:16-bkc-22495-RAM

In Re: RONNY GAMBOA,

                                                                            Debtor.


_____

ADVANCE CREDIT, INC.,
GAIL PEREZ,

                                                                            Plaintiffs-Appellants,

versus

RONNY GAMBOA,

                                                                            Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(August 19, 2019)

Before JORDAN, FAY and HULL, Circuit Judges.

PER CURIAM:

This appeal involves debtor Ronny Gamboa's filing for Chapter 13 bankruptcy, in which he claimed a homestead exemption under Florida law for his trailer and surrounding parcel of land. Appellants Advance Credit, Inc. and Gail Perez ("the creditors") filed an objection to Gamboa's homestead exemption. After an evidentiary hearing, the bankruptcy court concluded that Gamboa's property was entitled to the homestead exemption and overruled the creditors' objection. Appellant creditors now appeal the district court's judgment affirming the bankruptcy court's final order overruling their objection to Gamboa's homestead exemption. After review, we affirm.

## I.  BACKGROUND

Here are the relevant facts, some of which were jointly stipulated to by the parties and some of which were established at the evidentiary hearing and not disputed.

**A.    Debtor Gamboa's Purchase and Use of the Property**

2

In 1995, debtor Gamboa, while living in Chicago, Illinois, purchased a 14-acre parcel of vacant land in unincorporated Miami-Dade County, Florida. The parcel, located at 22600 S.W. 207 Avenue, Miami, Florida, is comprised of a single lot and is classified as agricultural land for purposes of Florida's ad valorem taxes.

In 2008, Gamboa bought a 40-foot long trailer from an adjacent landowner and moved the trailer onto his 14-acre parcel. Gamboa also poured a 1500 square foot patio in front of the trailer, but he continued to live in Chicago.

In 2011 and 2012, the creditors obtained two default judgments against Gamboa in Illinois state court, one for $141,562.30 and the other for $71,632.77. After the creditors foreclosed on Gamboa's property in Illinois, the only real estate Gamboa owned was the 14-acre parcel in Florida. Although the creditors recorded their Illinois judgments in Miami-Dade County in 2012, their liens were not perfected until they were re-recorded on January 8, 2015.[1]

Meanwhile, in mid-November 2013, Gamboa moved to Florida, moved his personal belongings into the trailer, and has lived in the trailer ever since. The trailer has a living room, two bedrooms, a bathroom, and a kitchen, has electrical

---

[1]The bankruptcy court found, and the creditors agreed, that the judgments recorded in 2012 did not create liens on Gamboa's property because they did not include the creditors' addresses as required by Florida law.

power, satellite television service, and water from an onsite well, and is attached to a septic tank.  Gamboa has received mail at the property since January 2014.

When Gamboa moved into the trailer, he believed he could reside there lawfully and did not intend to build another residence on the property.  In April 2016, however, Miami-Dade County issued a warning notice to Gamboa advising him that his use of a mobile home as a living quarters on agricultural land violated Miami-Dade County's ordinances.  As a result, on August 12, 2016, Gamboa applied for a building permit to build a small house on the property.

## B. Creditors' Objection to the Homestead Exemption in the Chapter 13 Bankruptcy Proceedings

On September 9, 2016, Gamboa filed a Chapter 13 voluntary petition for bankruptcy.  At the time, Gamboa was retired and in his early 70s, collecting social security payments of $717 per month, and living alone in the trailer.  Gamboa listed the 14-acre parcel of land in his Schedule C as exempt under Article X, Section 4 of the Florida Constitution, which protects homestead property from forced sale.

Specifically, the homestead exemption in Article X of Florida's Constitution provides:

> (a) There shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon, except for the payment of taxes and assessments thereon, obligations contracted for the purchase, improvement or repair thereof, or obligations

4

contracted for house, field or other labor performed on the realty, the following property owned by a natural person:

> (1) a homestead, if located outside a municipality, to the extent of one hundred sixty acres of contiguous land and improvements thereon, . . . or if located within a municipality, to the extent of one-half acre of contiguous land upon which the exemption shall be limited to the residence of the owner or the owner's family.

Fla. Const. art. X, § 4(a).  Florida's constitutional provision exempting a debtor's homestead from forced sale is separate from Florida's homestead tax exemption, which is found in Article VII, Section 6(a) of Florida's Constitution.

The creditors filed an objection to Gamboa's claimed homestead exemption. The creditors argued, inter alia, that Gamboa's property was not eligible for the homestead exemption because, when their liens attached on January 8, 2015, Gamboa's property was zoned for land use purposes and classified for tax purposes as agricultural, and Gamboa was living on the property in a trailer in violation of applicable Miami-Dade County ordinances.

## C.    Bankruptcy Court's Partial Ruling

After a prehearing conference, the bankruptcy court overruled in part the creditors' objection to Gamboa's claimed homestead exemption.  Relevant to this appeal, the bankruptcy court overruled the objection to the extent the creditors argued that Gamboa did not qualify for the exemption because his "home on the filing date was a trailer that was apparently prohibited from being used as a residence under applicable Miami-Dade County ordinances."  The bankruptcy

5

court concluded that "[r]esiding in a property in violation of city or county ordinances or zoning laws does not defeat an otherwise valid homestead claim."

The bankruptcy court also overruled the objection to the extent the creditors argued "that the constitutional homestead protection cannot be claimed" as a matter of law because the debtor had not filed for the homestead tax exemption and the property was classified as agricultural land for tax purposes. The bankruptcy court determined that the debtor's failure to claim the homestead tax exemption was not dispositive, especially where, as here, the objectors had not shown that the debtor had another residence.

The bankruptcy court identified the remaining issue to be resolved after an evidentiary hearing as: "Did the Debtor establish his intent to permanently reside in the Property prior to January 8, 2015, the date in which the Creditor's judgment lien was perfected."[2] The bankruptcy court clarified that, although it had overruled the creditors' arguments about the legal effect of Gamboa's failure to claim the property as his homestead for tax purposes, the property's agricultural zoning, and Gamboa's residing in the trailer in violation of applicable zoning ordinances, the creditors could "still use these facts to argue that the Debtor lacked the intent to permanently reside on the Property on the filing date of his chapter 13 case."

---

[2]The bankruptcy court identified two other outstanding issues, but those issues were rendered moot prior to the evidentiary hearing and have no bearing on this appeal.

**D.      Bankruptcy Court's Final Ruling on the Homestead Exemption**

The bankruptcy court held a two-day evidentiary hearing on the sole outstanding issue.  The creditors presented evidence of the property's agricultural use classification and the citations Miami-Dade County had issued to Gamboa for living in the trailer in violation of the county's ordinances.  The parties also presented evidence of Gamboa's ongoing efforts to obtain a building permit from the county.  At the time of the hearing, Gamboa had received some, but not all, of the necessary approvals from the various county departments for the building permit to issue.  Gamboa also testified that it would cost about $150,000 to build his planned house and that he hoped to pay for construction with gifts from friends and relatives and by getting a job.

After the hearing, the bankruptcy court issued a memorandum opinion and order overruling the creditors' objection to the homestead exemption.  The bankruptcy court stated that, to qualify for homestead protection from forced sale under Article X, Section 4 of the Florida Constitution, a debtor must: (1) show intent to make the property his permanent residence; and (2) live on the property. See Hillsborough Inv. Co. v. Wilcox, 13 So. 2d 448, 452 (Fla. 1943) ("The character of property as a homestead depends upon an actual intention to reside thereon as a permanent place of residence, coupled with the fact of residence."). The bankruptcy court found that "the evidence overwhelmingly established that

when he filed this case, the Debtor was living on the property and had the intent to permanently reside there."

The bankruptcy court noted that the creditors had conceded that Gamboa lived on the property before the bankruptcy filing and intended to make it his permanent residence. Instead, the creditors had reasserted their argument (already rejected in the bankruptcy court's prior ruling) that Gamboa was ineligible for the homestead exemption because of the property's agricultural classification for tax purposes and the trailer's violation of Miami-Dade County's zoning ordinances. The bankruptcy court again rejected the creditors' arguments. As to the property's agricultural classification for tax purposes, the bankruptcy court acknowledged that Gamboa "may need to request reclassification of that portion of the Property containing his residence," and that the reclassification would increase Gamboa's property taxes. The bankruptcy court concluded, however, that "the present classification does not affect the Debtor's constitutional right to the homestead exemption."

As to the creditors' other argument—that Gamboa's trailer was not a permanent legal dwelling and that he could not establish a homestead "unless he was living in a permitted and completed house"—the bankruptcy court found "no support for this narrow interpretation of the constitutional homestead protection." Noting that the homestead exemption is to be liberally construed in favor of the

8

homestead claimant, the bankruptcy court concluded that "[a] debtor's residence does not have to be a house." See In re McClain, 281 B.R. 769, 773 (Bankr. M.D. Fla. 2002) (stating that "so long as a debtor actually lived on real property being claimed as exempt, a non-exempt tree-house or tent would establish the requisite degree of permanency").  The bankruptcy court stressed that Gamboa owned no other real property and intended the trailer to be his permanent residence.

The bankruptcy court reviewed numerous decisions in which bankruptcy courts, both in Florida and in other states, had allowed a homestead exemption even though the debtor resided on the property in violation of some state or municipal law.  The bankruptcy court highlighted that these courts had found no authority for invalidating a homestead claim in such circumstances.  Finding these decisions persuasive, the bankruptcy court concluded "that the fact that the Trailer was not a lawful abode under County ordinance does not defeat the constitutional homestead exemption."

The bankruptcy court rejected the creditors' attempts to distinguish these cases by drawing a distinction between "living in a 'legal' structure where the use for residential purposes is illegal" and Gamboa's living in a structure that is not "legally" on the property.  The bankruptcy court found the distinction not meaningful and not "supported by any case law."  The bankruptcy court acknowledged that Gamboa "may ultimately be removed from the Trailer if he

9

does not get a building permit and construct a house," but that possibility "d[id] not defeat the exemption" because Gamboa had met the requirements for the exemption by living in the trailer and intending to remain on the property as his permanent residence.

The bankruptcy court distinguished Drucker v. Rosenstein, 19 Fla. 191 (Fla. 1882), relied upon by the creditors. In Drucker, the debtor had purchased a vacant and unoccupied lot, filed a statement in the county declaring the lot to be his homestead, drawn up plans and hired a contractor to build a house upon the lot for his family, and had lumber delivered to the property for that purpose, but neither he nor his family had occupied the lot. Drucker, 19 Fla. at 192-94, 198. The Florida Supreme Court held that the debtor's activities were not "sufficient occupation of the premises as a homestead to render them exempt from forced sale," and that "actual occupation of property as a home of the family is necessary to impress upon it the character of a homestead." Id. at 195, 198-99. In concluding that "there must be actual occupancy," the Florida Supreme Court stated that "[i]t is not necessary that a dwelling-house should be upon the premises; he might with his family reside in a tent set upon poles or a cabin erected upon it while building his house, and such occupation would give to it the character of a homestead and protect it under the statute from forced sale." Id. at 198.

10

The bankruptcy court explained that "[t]he only common fact between Drucker and this case is that both the Debtor here and the defendant in Drucker testified that they intended to build houses on the properties at issue." However, "[u]nlike the defendant in Drucker, Mr. Gamboa was living on the Property in his Trailer," and "[t]he actual occupancy requirement was unquestionably satisfied." The bankruptcy court stated that here, "whether or not the Debtor will be able to build the house he is planning, the Debtor has lived on the Property since 2013 and his actions have been wholly consistent with his intent to make the Property his permanent residence."

The bankruptcy court noted that Gamboa did not yet have the building permit required by applicable county ordinances so that Gamboa could continue residing in the trailer during construction. The bankruptcy court also acknowledged that the creditors had "presented evidence casting doubt on the Debtor's financial ability to build a house even if he gets his building permit." The bankruptcy court stressed, however, that Gamboa's "post[-]petition efforts to obtain a building permit corroborate[d] [his] unrebutted testimony that he intended to make the Property his permanent residence." In sum, the bankruptcy court stated that even if Gamboa ultimately is unable to afford to build his house and the county forces him to move from the trailer, "one thing is certain: This Debtor has made the Property his permanent residence since he moved into the Trailer in

11

2013, and he intends to stay on the Property as his permanent residence.  Those are the only facts that ultimately matter."

## E.    Creditors' Appeal to the District Court

The creditors filed a notice of appeal to the district court from the bankruptcy court's final order overruling their objection.  After briefing from the parties, the district court reviewed the bankruptcy court's order de novo and affirmed.

The district court summarized the key, undisputed facts as: (1) when Gamboa filed his bankruptcy petition, he was living in the trailer on a 14-acre parcel of land located outside of a municipality; (2) the parcel was classified as agricultural for property tax purposes, and Gamboa did not claim the homestead exemption for property tax purposes; (3) Gamboa was living in the trailer in violation of a Miami-Dade County ordinance; and (4) at all relevant times, Gamboa intended to reside permanently in the trailer.

The district court explained that the creditors' appeal raised a purely legal issue and asked the court "to be the first to hold that Florida's homestead exemption cannot apply to a structure that is not legally permitted to be on the property where it's located."  Describing the bankruptcy court's order as "comprehensive and well-reasoned," the district court agreed with the bankruptcy court "that since the homestead exemption was created more than 135 years ago,

establishing the exemption has required a debtor to demonstrate two—and only two—facts: (1) occupation of the property; and (2) an intent to reside there permanently." In Gamboa's case, both required facts were undisputed. The district court further agreed with the bankruptcy court that the creditors' "argument in favor of a third requirement—that the property must comply with all applicable codes, regulations, and other laws—fails as a matter of law."

The district court adopted the bankruptcy court's analysis and its conclusions that Gamboa's property qualified for the homestead exemption and that the exemption was "not lost just because the trailer was on the property in violation of a County ordinance." Accordingly, the district court affirmed the bankruptcy court's order, directed a copy of its order to the bankruptcy court, and closed the case.[3]

---

[3]The district court's affirmance of the bankruptcy court's order overruling the creditors' objection finally disposed of a discrete dispute—the homestead exemption claim—within the larger bankruptcy case. See Bullard v. Blue Hills Bank, 575 U.S. ___, ___ 135 S. Ct. 1686, 1692 (2015); Howard Delivery Serv., Inc. v. Zurich Am. Ins. Co., 547 U.S. 651, 657 n.3, 126 S. Ct. 2105, 2110 n.3 (2006); In re Martin Bros. Toolmakers, Inc., 796 F.2d 1435, 1437-38 (11th Cir. 1986); In re Charter Co., 778 F.2d 617, 621 (11th Cir. 1985) ("In bankruptcy proceedings, it is generally the particular adversary proceeding or controversy that must have been finally resolved, rather than the entire bankruptcy proceeding."). Given that the district court's affirmance here "leave[s] nothing more for the bankruptcy court to do" with respect to the homestead exemption claim, the district court's ruling qualifies as a final decision under 28 U.S.C. § 158(d)(1). See In re Charter Co., 778 F.2d at 621.

In addition, Gamboa's homestead exemption claim is independent from the substance of the other claims in the bankruptcy court proceedings, and prompt review is necessary to protect Gamboa's interests. See Wisz v. Moister (In re Wisz), 778 F.2d 762, 764 (11th Cir. 1985) (explaining that the collateral order doctrine allows immediate appeal from orders that are "independent from the substance of the other claims in the action" where "prompt review is necessary to protect important interests of any party").

13

## II.  DISCUSSION

On appeal, the creditors argue that the bankruptcy court misread the Florida Supreme Court's <u>Drucker</u> decision and that, under a proper reading of <u>Drucker</u>, Gamboa's trailer is only a "temporary structure," and not a "permanent home," and thus Gamboa's 14-acre property cannot qualify for homestead protection.  After review, we find no merit to the creditors' arguments.[4]

Properly read, <u>Drucker</u> requires a person claiming a homestead exemption from forced sale under the Florida Constitution to show he actually occupied the property as a residence because a "bare lot unoccupied cannot be a homestead."  19 Fla. at 198.  <u>Drucker</u> does not require the homestead claimant's actual occupation to be in a "permanent home."  Indeed, the <u>Drucker</u> court explicitly stated otherwise when it said, "[i]t is not necessary that a dwelling-house should be upon the premises; he might with his family reside in a tent set upon poles or a cabin erected upon it while building his house, and such occupation would give to it the character of a homestead and protect it under the statute from forced sale."  <u>Id.</u> The problem for the homestead claimant in <u>Drucker</u> was not that he resided in a temporary structure on the lot, but that he had not resided on the lot at all.  <u>See id.</u>

---

[4]As "the second appellate court to review" the bankruptcy court, we "assess the bankruptcy court's judgment anew, employing the same standard of review the district court itself used."  <u>In re Failla</u>, 838 F.3d 1170, 1174 (11th Cir. 2016) (quotation marks omitted).  Accordingly, we review the bankruptcy court's conclusions of law <u>de novo</u> and its fact findings for clear error.  <u>In re Hood</u>, 727 F.3d 1360, 1363 (11th Cir. 2013).

("In the case at bar there was and had been no actual occupation of the lot as a homestead since the title passed to the appellee.").

Here, it is undisputed that Gamboa has resided on his 14-acre parcel in his trailer since November 2013, which is sufficient to satisfy <u>Drucker</u>'s actual occupancy requirement.  Nothing in <u>Drucker</u> or any other decision cited by the creditors requires Gamboa's trailer to be "permitted" or "built and permanently placed on the premises in accordance with applicable law and building code requirements" for Gamboa's residence inside it to qualify as actual occupancy.[5] For this and the other reasons given in the bankruptcy court's well-reasoned memorandum opinion and order overruling the creditors' objection to the homestead exemption, we affirm.

**AFFIRMED.**

---

[5]We stress that this is not a case involving a motor home or other recreational vehicle that can be used for transportation and is not affixed to real property.