# AMERICAN INDUSTRIAL LEASING COMPANY, Plaintiff-Respondent,

v.

# Steven and Lilah MODEROW, Defendants-Appellants.

Court of Appeals

*No. 88–0025. Submitted on briefs September 6, 1988.—Decided October 12, 1988.*

(Also reported in 432 N.W.2d 617.)

For the plaintiff-respondent the cause was submitted on the briefs of *Prieve, Meyer & Nestingen, S.C.* by *Robert H. Storm* and *Nancy M. Bonniwell,* of Milwaukee.

For the defendants-appellants the cause was submitted on the briefs of *Schober & Ulatowski, S.C.* by *Thomas L. Schober,* of Green Bay.

Before Moser, P.J., Sullivan and Fine, JJ.

MOSER, P.J. Appellants Steven and Lilah Moderow (Moderows) appeal from a judgment and order of the trial court finding them in default of their lease with American Industrial Leasing Company (American), and awarding American replevin, money damages, actual costs and attorney's fees. We hold that the trial court was correct in its analysis and application of the law, and therefore we affirm.

On September 23, 1981, the Moderows entered into a transaction with American. They agreed to make eighty-four payments of $619.22 for the use of a mono-slope hog confinement building in their farming operation. The Moderows were required to make an initial payment of $1,857.66, or the sum of three monthly payments, prior to installation of the building. This initial payment was to be wholly applied toward the Moderows' obligation to American. Furthermore, the terms of the lease provided that title to the building would remain with American and that the building would be returned to American upon expiration of the lease.

American purchased the hog confinement building for $25,100, received the initial payment from the Moderows, and installed the building on their farm. The building consisted largely of concrete blocks, and could not be removed or severed without sustaining

significant damage. In late 1983 or early 1984, the Moderows ran into financial difficulties and defaulted on their payments. Appellants and American engaged in negotiations to work out another payment arrangement, but to no avail. American filed a complaint to obtain money damages and replevin of the building on March 27, 1986. The Moderows counterclaimed, alleging that the transaction was subject to the Wisconsin Consumer Act (Act), chs. 421–27, Stats., and that American had violated several provisions of the Act and was thus liable for damages.

The case was scheduled to be tried to the court on January 29, 1987. However, respondent elected to proceed on that day in the context of a hearing on the merits. Both parties filed briefs, and the court issued a written decision on September 14, 1987. The trial court held that the transaction was not subject to the Act, found the Moderows in default of their lease, and entered judgment in favor of American for replevin, actual costs, attorney's fees and money damages. The total monetary award was $35,082.32, which included the principal sum still owed on the building of $29,080.28. This appeal arises from the judgment and order for judgment dated December 1, 1987. The Moderows claim that (1) the transaction is subject to the Act; (2) the transaction was a consumer credit sale disguised as a lease; and (3) American violated the Act by failing to disclose certain payment information, by obtaining a security interest in their land and crops, and by assessing an excessive finance charge on their transaction.

66

## I. IS THE AMERICAN-MODEROW TRANSACTION SUBJECT TO THE WISCONSIN CONSUMER ACT?

Whether or not the American-Moderow transaction is subject to the Act involves an application of the Act to the facts of this case. The application of a statute to a particular set of facts is a question of law.[1] An appellate court decides questions of law without deference to the trial court.[2]

Appellants contend that because they paid three monthly payments totaling $1,857.66 prior to accepting the hog confinement building, its purchase price of $25,100 was reduced by that amount, and therefore the transaction was valued at $23,242.34. This valuation would bring the transaction within the $25,000 limit of the Act.

Section 421.202, Stats., provides:

*Exclusions.* Chapters 421 to 427 do not apply to:

. . . .

(6) Consumer credit transactions in which the amount financed exceeds $25,000.00 or other consumer transactions in which the cash price exceeds $25,000.00

Section 421.301, Stats., provides definitions of the terms used in sec. 421.202(6) as follows:

(5) "Amount financed" in a consumer credit transaction means the total of the following items

---

[1]*Neis v. Board of Educ. of Randolph School Dist.,* 128 Wis. 2d 309, 313, 381 N.W.2d 614, 616 (Ct. App. 1985).

[2]*Muggli Dental Studio v. Taylor,* 142 Wis. 2d 696, 699, 419 N.W.2d 322, 323 (Ct. App. 1987).

from which any prepaid finance charge or required deposit balance has been excluded:

(a) In a consumer credit sale, the cash price of the real or personal property or services, less the amount of any downpayment whether made in cash or in property traded in, or, in a consumer loan, the amount paid to, receivable by or paid or payable to the customer or to another person in his behalf;

(b) In a consumer credit sale, the amount actually paid or to be paid by the creditor pursuant to an agreement with the customer to discharge a security interest in or a lien on property traded in; and

(c) To the extent not included in par. (a) or (b):

1. Any applicable sales, use, excise or documentary stamp taxes;

2. Amounts actually paid or to be paid by the creditor for registration, certificate of title or license fees; and

3. Additional charges permitted by s. 422.202.

. . . .

(7) "Cash price" means the price at which property or services are offered, in the ordinary course of business, for sale for cash, and may include:

(a) The cash price of accessories or services related to the sale such as delivery, installation, alterations, modifications and improvements; and

(b) Taxes, to the extent imposed on the cash sale.

. . . .

(13) "Consumer transaction" means a transaction in which one or more of the parties is a customer for purposes of that transaction.

....

(38) "Required deposit balance" means any deposit balance or any investment which the creditor requires the customer to make, maintain or increase in a specified amount or proportion as a condition to the extension of credit except:

....

(b) ·A deposit balance which will be wholly applied toward satisfaction of the customer's obligation in the transaction;

■

In the case at hand, the Moderows agreed to make eighty-four payments of $619.22 to American for a mono-slope hog confinement building. American purchased the building for $25,100 and required an initial payment from the Moderows, totaling three monthly payments, prior to installing the building. The initial payment was wholly applied toward satisfaction of the Moderows' obligation in the transaction. The $25,100 figure represents the cash price for the building, and the initial payment represents three installment payments on the eighty-four month agreement, and not a "down payment" intended to reduce the purchase price. The cash price in this transaction thus exceeds the $25,000 limit of the Act. Therefore, this transaction is excluded from the Act, and the trial court was correct in its application of the law.

Because this case is not bound by the Act, appellants' third issue fails as well. We cannot determine whether American violated a statute which does not apply to its transaction with the Moderows. The trial court thus was correct in not determining whether American violated the Act by (1) failing to disclose payment information to the Moderows, (2) obtaining a security interest in their land and crops,

or (3) assessing an excessive finance charge on their transaction.

## II. DID THE AMERICAN-MODEROW TRANSACTION INVOLVE A TRUE LEASE?

Appellants' one remaining issue involves whether the agreement between them and American was a consumer credit sale or a lease. Appellants assert that this court should characterize the American-Moderow transaction as a credit sale. Such a characterization would possibly have worked to the Moderows' benefit had their case been subject to the Act. While this case is not subject to the Act, we conclude that the trial court correctly treated the transaction as a lease agreement.

Whether or not the lease in question constituted a true lease, as opposed to a disguised credit sale, is a question of law. This court may review questions of law without deference to the decisions of a trial court.[3]

In this case, the Moderows rely on sec. 421.301(9), Stats., in support of their argument that their transaction with American was a disguised credit sale. Section 421.301(9) provides that:

> (9) "Consumer credit sale" means a sale of goods, services or an interest in land to a customer on credit where the debt is payable in instalments or a finance charge is imposed and includes any agreement in the form of a bailment of goods or lease of goods or real property if the bailee or lessee pays or agrees to pay as compensation for use a sum substantially equivalent to or in excess of the aggregate value of the goods or real property

[3]*Id.*

> involved and it is agreed that the bailee or lessee will become, or for no other or a nominal consideration has the option to become, the owner of the goods or real property upon full compliance with the terms of the agreement.

However, the Moderows' lease did not give them the option to become the owner of the confinement building at the end of the lease period. Also, title to the building remained with American, and American was to regain possession of the building after the lease period terminated. The Wisconsin Supreme Court has held that "[u]nless the parties' complete agreement contains provisions, either oral or written, for the vesting of title to the goods in their user, the parties' agreement must be considered a true lease as opposed to a conditional sales contract or a chattel mortgage disguised as a lease."[4] Therefore, the American-Moderow transaction was based upon a true lease, and the trial court was correct in reaching this conclusion.

 *By the Court.*—Judgment and order affirmed.

---

[4]*Dairyland Equip. Leasing, Inc. v. Bohen,* 94 Wis. 2d 600, 609–10, 288 N.W.2d 852, 856 (1980).