In re **SHEPARD CLOTHING COMPANY, INC.,**
Debtor.

**Congress Financial Corporation (New England), and GB Retail Funding, LLC, Appellants,**

v.

**Shepard Clothing Company, Inc., Appellee.**

**No. CIV.A. 01–11862–GAO.**

United States District Court,
D. Massachusetts.

July 26, 2002.

---

Anthony L. Gray, Joseph F. Ryan, Elise Busny, Brown, Rudkick, Freed & Gesmer, Boston, MA, for Congress Financial Corporation (New England), Appellant.

Jonathan D. Yellin, Riemer & Braunstein, Boston, MA, for GB Retail Funding LLC, Appellant.

Peter J. Haley, Stephen F. Gordon, Gordon & Wise, Boston, MA, for Shepard Clothing Company, Inc., Appellee/Debtor.

## MEMORANDUM and ORDER

O'TOOLE, District Judge.

The appellants, Congress Financial Corporation ("Congress") and GB Retail Funding, LLC ("GB"), seek review of a bankruptcy judge's decision to deny their motion for relief from the automatic stay in the bankruptcy proceedings of the appellee, Shepard Clothing Company, Inc. ("Shepard"). Congress and GB are secured creditors who claim that the bankruptcy judge erred when she determined that they were adequately secured and not entitled to relief from the stay. Shepard has moved to dismiss this appeal for lack of jurisdiction. Shepard argues that the bankruptcy judge's decision was interlocutory and therefore not appealable under 28 U.S.C. § 158(a). For the reasons discussed below, Shepard's motion to dismiss is granted, and the appeal is dismissed.

### A.  Summary of Facts

Shepard is a closely held Massachusetts corporation located in New Bedford, Massachusetts, which has been manufacturing men's clothing for over thirty years. Shepard has over 220 employees at its New Bedford facility; in the past its annual sales have been as high as approximately $40 million. Congress and GB are Shepard's primary secured creditors. Congress is Shepard's primary lender and is owed approximately $8.5 million. GB is owed approximately $1.3 million. Congress and GB hold a security interest in all of Congress' assets, including its inventory and receivables.

On August 16, 2001, Shepard filed a Chapter 11 petition and began to operate its business as a debtor-in-possession. Shepard also filed a motion for authorization to use cash collateral pursuant to 11 U.S.C. § 363. In support of its motion, Shepard calculated that the total value of its assets (including accounts receivable, finished goods, raw inventory, machinery, equipment, and real property) was at least $13,370,922, which is more than what was

owed to Congress and GB by $3,570,922. Shepard asked the bankruptcy judge to authorize it to spend $653,070 to continue its operations for a seven week period. In return, Shepard offered to grant Congress and GB the following protection: 1) a lien on all inventory generated post-petition and on accounts receivable generated by the use of the cash collateral, 2) a promise to insure all assets and to name Congress and GB as the loss payees, and 3) a promise to supply Congress and GB's counsel with all of the operating statements filed with the United States Trustee Office and with any other reasonably requested financial information. *See* Debtor's Emergency Mot. for Authorization to Use Cash Collateral at 5–6.

Congress and GB opposed the motion, arguing that Shepard had exaggerated the value of its assets, which they said were worth less than the $9.8 million they were owed. In other words, Congress and GB argued that they were under-secured rather than over-secured. Besides opposing Shepard's motion, the two creditors also moved for relief from the automatic stay to enable them to collect on their debt outside of bankruptcy. *See* 11 U.S.C. § 362(d) ("the court shall grant relief from the stay ... for cause, including the lack of adequate protection of an interest in property of such party in interest").

The bankruptcy judge held evidentiary hearings on Shepard's motion to use cash collateral and on Congress and GB's motion for relief from the automatic stay on October 3 and 22. During those two days, there was testimony by eight witnesses and thirty exhibits were entered into evidence. On October 22, the bankruptcy judge issued an oral order granting Shepard's motion and denying the motion by Congress and GB. *See* Hr'g Tr., Oct. 22, at 83–89. The Judge determined that Shepard had "put forth sufficient evidence of its

future viability and its prospects for a successful reorganization" that it would be appropriate to evaluate the parties' positions using Shepard's going-concern value rather than its liquidation value. *Id.* at 88. The Judge also pointed out that Congress's loan officer in charge of Shepard's account had consistently given Shepard high ratings and that an officer from Shepard had persuasively testified "that the debtor had significantly reduced its losses ... [and] that gross margins are improving" due in part to a newly negotiated business deal. *Id.* at 86–87. These findings convinced her that a sufficient equity cushion existed to permit Shepard to use cash collateral. *Id.* at 88. The existence of an equity cushion also persuaded the judge that Congress and GB were adequately protected and should not be given relief from the automatic stay. *Id.* at 89.

## B. *Finality of the Bankruptcy Judge's Denial of Relief from the Automatic Stay*

■ The appellants only have an automatic right to appeal the bankruptcy judge's decision if her ruling was "final." 28 U.S.C. § 158(a). Normally, a civil action is considered to be a "single judicial unit" from which only one appeal can be made. *In re Saco Local Dev. Corp.*, 711 F.2d 441 (1st Cir.1983). However, this approach is not well-suited to a bankruptcy proceeding which often consists of a series of several distinct disputes, related only in that they all involve the debtor or its assets. *See In re James Wilson Assocs.*, 965 F.2d 160, 166 (7th Cir.1992). As a result, in bankruptcy, orders are final "if they finally dispose of discrete disputes within the larger case." *In re Saco*, 711 F.2d at 444. This definition of finality "includes an order that conclusively determines a separable dispute over a creditor's claim or property." *Id.* at 445–46.

▇ A bankruptcy judge's decision to *grant* relief from the automatic stay is final and appealable. *See In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1283 (2d Cir. 1990) ("All seem to agree that orders lifting the automatic stay are final."). Courts have reasoned that "orders lifting the automatic stay are final because the issue of whether the litigation in question may proceed has been resolved and because an immediate appeal by the trustee or debtor is necessary if there is to be appellate review at all." *Id.* Once the automatic stay is lifted, a secured creditor is free to pursue remedies against the debtor or his assets outside the bankruptcy proceeding. Such an order clearly is the bankruptcy judge's final say on that creditor's rights and remedies.

The more difficult question is whether a bankruptcy judge's decision to *deny* a creditor's motion for relief from the automatic stay is final for purposes of appeal under § 158(a). Some circuits have held that all denials of relief from the stay are final and appealable. *See In re Chunn*, 106 F.3d 1239, 1241 (5th Cir.1997); *Eddleman v. United States Dept. of Labor*, 923 F.2d 782, 785 (10th Cir.1991), *overruled in part on other grounds by Temex Energy, Inc. v. Underwood, Wilson, Berry, Stein & Johnson*, 968 F.2d 1003, 1005 n. 3 (10th Cir.1992); *In re Sonnax*, 907 F.2d at 1285; *In re Dixie Broad., Inc.*, 871 F.2d 1023, 1026 (11th Cir.1989) (without discussion); *In re Kemble*, 776 F.2d 802, 805 (9th Cir. 1985); *In re Leimer*, 724 F.2d 744, 745–46 (8th Cir.1984). These circuits have reasoned that "Congress perceived the automatic stay to be similar to a permanent injunction," and that if orders regarding the automatic stay "are not considered final and appealable, they would be, for the most part, unreviewable." *In re Chunn*, 106 F.3d at 1241. The Third Circuit has taken a less categorical approach and has left open the possibility that there may be instances where a denial of relief from stay is interlocutory and not appealable as of right. *See In re West Elecs., Inc.*, 852 F.2d 79, 82 (3d Cir.1988); *In re Comer*, 716 F.2d 168, 174 n. 11 (3d Cir.1983).

The First Circuit has not resolved the precise question whether a denial of a motion for relief from stay is automatically final. In fact, recently the court specifically declined to reach the issue. *See In re Calore Express Co.*, 288 F.3d 22, 34 (1st Cir.2002). However, it has indicated a disagreement with one of the premises underlying the approach taken by other circuits. Rather than analogizing the automatic stay to a permanent injunction, the First Circuit has treated it as more like a preliminary order. *See Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 33 (1st Cir. 1994) (stating that a motion for relief from the automatic stay is "analogous to a preliminary injunction hearing"). Under this view of the automatic stay, a denial of relief is not inherently or automatically "final."

The recent decision of the First Circuit Bankruptcy Appellate Panel ("BAP") in *In re Henriquez*, 261 B.R. 67 (1st Cir. BAP 2001), is also noteworthy. In *Henriquez*, the BAP decided *sua sponte* that it could not hear an appeal of a denial of relief from the automatic stay because the bankruptcy judge's decision was interlocutory. *Id.* at 71–72. The BAP reasoned that the creditor's claim to the bankrupt's assets had not been fully resolved, and that the creditor still had opportunities to pursue resolution of its claim before the bankruptcy judge. *Id.*

In the circumstances of this case, the bankruptcy judge's denial of relief from the automatic stay was not final. The disagreement between Shepard and its creditors underlying this appeal concerns the value of Shepard's business and

whether an adequate equity cushion exists to protect the creditors' interests. The value of the business, however, is not fixed because Shepard continues to operate as debtor-in-possession. If this Court reviewed the bankruptcy judge's determinations today, those findings could be outdated a short time later. The bankruptcy judge recognized this problem and never made a final determination of the value of the business. Instead, she authorized Shepard to spend cash collateral for a limited period of time, after which she held a renewed hearing into the company's position. Counsel informed this Court during oral arguments that the bankruptcy judge has entered at least two additional orders permitting Shepard to spend cash collateral. Each time the bankruptcy judge revisits the cash collateral order, the creditors have an opportunity to object and to re-examine the question of the value of Shepard's assets. In these circumstances it cannot be said that the bankruptcy judge has finally resolved the questions underlying the denial of the motion for relief from the automatic stay; the bankruptcy judge has not conclusively determined whether the creditors were adequately protected.

The two cases on which Congress and GB rely do not persuade this Court that the bankruptcy judge's denial of the motion to lift the stay was an appealable final order. In *In re O'Connor*, 808 F.2d 1393 (10th Cir.1987), a bankruptcy court determined that a creditor bank was adequately protected, and authorized the debtor to spend cash collateral. The bank appealed the bankruptcy court's decision to the district court, which reversed the bankruptcy court's holding. *Id.* at 1395. The Tenth Circuit's opinion does not mention whether the question of finality was explicitly addressed at the district court level. *Id.* In a footnote, the appellate court states in a conclusory fashion:

If the bankruptcy court's order was final for the purpose of [appellee's] appeal to the district court, the district court's order is final for the purpose of appeal to this court. Moreover, given the nature of bankruptcy proceedings and the appellate rights arising therefrom, an order of a district court reversing a bankruptcy court order is final unless the district court remands the case for 'further significant proceedings.'

*Id.* at 1395 n. 1 (citation omitted). The Tenth Circuit's inquiry was whether it had jurisdiction over the appeal from the district court; it did not inquire into whether the bankruptcy judge's order was "final" under § 158 for review by the district court. That fact was assumed, not decided.

The second case GB and Congress rely on, *In re Safeguard Self–Storage Trust*, 2 F.3d 967 (9th Cir.1993), also is not a useful guide. In *Safeguard*, the bankruptcy court had issued a declaratory order which held that certain revenues from the bankrupt business did not constitute cash collateral under 11 U.S.C. § 363(a). *Id.* at 969. The Ninth Circuit found that this was a final, appealable order. In contrast to the issues raised by GB and Congress in this appeal, the question there was how certain assets were to be classified under the bankruptcy code. The proper classification of assets is a one-time problem. The value of assets, on the other hand, may be subject to reassessment on an ongoing basis as Shepard continues to operate its business.

In *Safeguard*, the Ninth Circuit also held that whether a bankruptcy judge's order is "final" turns, at least in part, on whether a party may suffer irreparable harm as a result. *See id.* at 969. However, in the First Circuit, the "irreparable harm" inquiry has generally been applied

when a party asks leave of the district court to review an interlocutory order. *See* 28 U.S.C. § 158(3); 11 U.S.C. Rule 8003; *In re Harrington,* 992 F.2d 3, 6 (1st Cir.1993) (appellant failed to show that an undue hardship would result if appellate court did not permit appeal of an interlocutory ruling in a bankruptcy matter).

Finally, the central role that these creditors play in the viability of Shepard's business also persuades this Court that the bankruptcy judge's denial of the appellants' motion to lift the stay was not final. Congress and GB together hold an interest in all of Shepard's assets. In effect, the purpose of Shepard's bankruptcy proceedings is to keep these two creditors at bay while Shepard tries to assemble a reorganization plan. If the automatic stay were lifted, that would effectively end the bankruptcy proceedings and eliminate any chance for Shepard to reorganize. The appellants' efforts to lift the stay are therefore inextricably intertwined with the entire bankruptcy proceeding. This is not a situation like in many of the cases cited above where a creditor is asking for final resolution for only a single, severable asset. Instead, these creditors are asking to exercise their claims to all of Shepard's assets. In these circumstances, the First Circuit's caution in *Grella* that a hearing on the motion to stay is not intended necessarily to resolve all matters related to the relationship between a creditor and debtor is particularly pertinent. *Id.,* 42 F.3d at 32.

## C. *Conclusion*

In the circumstances of this case, the denial of the creditors' motion for relief from the automatic stay did not constitute a final order appealable of right. Appellee's motion to dismiss the appeal is therefore GRANTED. The appeal is DISMISSED.